# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LETRAKUS TYLER | CIVIL ACTION NO. 6:15-cv-0824 |
| LA. DOC #582686 | |
| VS. | SECTION P |
| | JUDGE DOHERTY |
| WARDEN BURL CAIN | MAGISTRATE JUDGE HANNA |

## REPORT AND RECOMMENDATION

Before the court is a petition for writ of *habeas corpus* filed pursuant to 28 U.S.C. § 2254 on March 25, 2015 by pro se petitioner Letrakus Tyler.  Petitioner is an inmate in the custody of the Louisiana Department of Corrections incarcerated at the Louisiana State Penitentiary in Angola, Louisiana.  Petitioner attacks his April 14, 2011 convictions for aggravated rape, attempted first degree murder and aggravated burglary, for which he was  sentenced on April 21, 2011 to life, fifty and thirty years imprisonment, respectively, the sentences to run concurrent, by the Fifteenth Judicial District Court for Lafayette Parish, Louisiana.

This matter has been referred to the undersigned in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the court. For the following reasons, it is recommended that this *habeas corpus* petition be **DENIED AND DISMISSED WITH PREJUDICE**.

## STATEMENT OF THE CASE

On May 13, 2009, Tyler was charged by grand jury indictment with aggravated rape, a violation of La.R.S. 14:42, attempted first degree murder, a violation of La.R.S. 14:27 and La.R.S. 14:30  and, aggravated burglary, a violation of La.R.S. 14:60.  The charges stemmed from a March 8, 2009 incident where petitioner entered the home of D.C., a ten-year-old girl, through her bedroom window and raped her vaginally and anally.  During the act of rape, petitioner held his hand over D.C.'s mouth, held her neck, tried to smother her with his shirt, threatened to kill her, and struck her several times on the back.  Petitioner was the ex-boyfriend of D.C.'s mother, and a protective order was in effect at the time of the offenses.

After waiving his right to trial by jury, on April 14, 2011, the Court found petitioner guilty as charged.   On April 21, 2011, petitioner was sentenced  to life, fifty and thirty years imprisonment, respectively, the sentences to run concurrent,

On May 2, 2012, the Louisiana Third Circuit Court of Appeal affirmed petitioner's convictions and sentences.  *State v. Tyler*, 93 So.3d 670, 2011-1256 (La. App. 3rd Cir. 2012).  The Louisiana Supreme Court denied petitioner's request for discretionary review on February 8, 2013.   *State v. Tyler*, 107 So.3d 643, 2012-KO-1260 (La. 2012). On direct appeal petitioner raised claims which

2

included that there was insufficient evidence to support his attempted first degree murder conviction and that his convictions for aggravated rape and aggravated burglary constitute double jeopardy.

Petitioner filed an Application for State Post-Conviction relief on October 17, 2013.  Petitioner asserted a single claim for relief: that he received ineffective assistance of counsel because counsel failed to file a Motion to Quash his indictment on grounds that the indictment was defective because it failed to adequately inform petitioner of the elements of the attempted first degree murder and aggravated rape counts. On October 24, 2013, the trial court summarily denied relief. [rec. doc. 7-3, pg. 3].

The Louisiana Third Circuit Court of Appeal denied writs on February 28, 2014 as follows:

> There is no error in the trial court's ruling denying Relator's application for post-conviction relief filed in the trial court on October 17, 2013.  *See* La.Code Crim,P. arts. 465, 927, 928, 930 and 930.1, *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984) and *State ex rel. Foy v. Criminal Dist. Court*, 96-519 (La. 3.15.96), 669 So.2d 393.

*State v. Tyler*, KH 13-1314 (La. App. 3 Cir. 2/28/2014) (unpublished) [rec. doc. 7-3, pg. 46].  On November 26, 2014, the Louisiana Supreme Court denied writs without comment.  *State of Louisiana ex rel. Letrakus Tyler*, 2014-KH-0675, 152 So.3d 900 (La. 11/26/2014).

Petitioner filed the instant federal *habeas corpus* petition on March 25, 2015. Petitioner asserts the following claims for relief : (1) that there was insufficient evidence to support petitioner's conviction for attempted first degree murder; (2) that his convictions for aggravated rape and aggravated burglary constitute double jeopardy; and (3) ineffective assistance of counsel because counsel failed to file a Motion to Quash the indictment on grounds that the indictment was defective because it failed to adequately inform petitioner of the elements of the attempted first degree murder and aggravated rape counts.

The State has filed an Answer and Memorandum in Opposition to federal *habeas corpus* relief [rec. doc. 14].

## LAW AND ANALYSIS

### *Standard of Review*

This *habeas* petition was filed on March 25, 2015; therefore the standard of review is set forth in 28 U.S.C. § 2254(d), as amended in 1996 by the Antiterrorism and Effective Death Penalty Act (AEDPA). *Knox v. Johnson,* 224 F.3d 470, 476 (5th Cir. 2000); *Orman v. Cain,* 228 F.3d 616, 619 (5th Cir. 2000).[1]

---

[1]Before enactment of AEDPA, "a federal court entertaining a state prisoner's application for *habeas* relief . . . exercise[d] its independent judgment when deciding both questions of constitutional law and mixed constitutional questions (i.e., application of constitutional law to fact). In other words, a federal *habeas* court owed no deference to a state court's resolution of such questions of law or mixed questions." *Montoya ,* 226 F.3d at 403-04 *citing Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 1516, 146 L.Ed.2d 389 (2000) and 28 U.S.C. S 2254(d) (West 1994).

AEDPA substantially restricts the scope of federal review of state criminal court proceedings in the interests of federalism, comity, and finality of judgments. *Montoya v. Johnson*, 226 F.3d 399, 403-04 (5th Cir. 2000) *citing Teague v. Lane,* 489 U.S. 288, 306, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) and *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 1516, 146 L.Ed.2d 389 (2000)[2] (noting that AEDPA "placed a new restriction on the power of federal courts to grant writs of *habeas corpus* to state prisoners").

Title 28 U.S.C. § 2254(d) as amended, states as follows:

**(d)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

> **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under the deferential scheme of § 2254(d), as amended, this Court must give deference to a state court decision for "any claim that was adjudicated on the

---

[2]Justice O'Connor delivered the opinion of the Court with respect to the standard of review, while Justice Stevens delivered the opinion of the Court with respect to other aspects of the opinion which have no bearing on the issues herein.

merits in State court proceedings" unless the decision was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,"  28 U.S.C. § 2254(d)(1), or the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).

A *habeas* petitioner has the burden under AEDPA to prove that he is entitled to relief.  *Ormon*, 228 F.3d at 619 *citing Williams,* 120 S.Ct. at 1518, and *Engle v. Isaac*, 456 U.S. 107, 134-35, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). Under § 2254(d), as amended, "[t]he federal courts no longer have a roving commission to discern and 'correct' error in state court proceedings, but must exercise a more limited review . . . ."  *Grandison v. Corcoran*, 78 F.Supp.2d 499, 502 (D. Md. 2000).  Federal courts may not grant the writ merely on a finding of error by a state court or on a finding of mere disagreement with the state court. *Montoya,* 226 F.3d at 404;  *Orman,* 228 F.3d at 619.

A decision is "contrary to" clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than . . . [the Supreme Court] has on a  set of materially indistinguishable facts."  *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000) *citing Williams,* 120 S.Ct. at 1523; *Montoya,* 226 F.3d at 403-04 *citing  Williams*, 120 S.Ct. at 1523.  "The 'contrary

to' requirement 'refers to holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state-court decision.'" *Dowthitt,* 230 F.3d at 740 *citing Williams*, 120 S.Ct. at 1523.

Under the "unreasonable application" clause, a federal *habeas* court may grant the writ only if the state court "identifies the correct governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Dowthitt,* 230 F.3d at 741 *citing Williams,* 120 S.Ct. at 1523.  The standard is one of objective reasonableness. *Montoya,* 226 F.3d at 404 *citing Williams,* 120 S.Ct. at 1521-22.  A federal *habeas* court may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. . . [r]ather, that application must also be unreasonable." *Williams,* 120 S.Ct. at 1522.

Section 2254(d)(2) speaks to factual determinations made by the state courts.  *Dowthitt,* 230 F.3d at 741.  Federal *habeas* courts presume such determinations to be correct; however, the petitioner can rebut this presumption by clear and convincing evidence.  *Id.*  Thus, this court must defer to the state court's decision unless it was based on an unreasonable determination of the facts in light of the record of the State court proceeding.  *Id. citing* 28 U.S.C. § 2254(d)(2);

*Knox,* 224 F.3d at 476 *citing Chambers v. Johnson,* 218 F.3d 360, 363 (5ᵗʰ Cir. 2000).

In sum, "[a] state court's determination that a claim lacks merit precludes federal *habeas* relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 786 (2011). Under § 2254(d), "[a]s a condition for obtaining *habeas corpus* from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-787.  "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 786.

## I. Sufficiency of the Evidence

Petitioner argues that the evidence presented was insufficient to convict him of attempted first degree murder.  More specifically, he argues that there was insufficient evidence to prove that he possessed the specific intent to kill D.C. This contention is based on Tyler's argument that the testimony that he told D.C. to help him reunite with her mother is inconsistent with a finding that he had the specific intent to kill D.C.  Tyler further argues that there was no evidence that he attempted to deprive D.C. of oxygen and suffocate her.  Rather, he contends that the acts of putting a hand and shirt over D.C.'s mouth were consistent with

attempting to prevent her from screaming and that more would be necessary to prove he had the specific intent to kill her.

The State argues that Tyler's threatening to kill D.C. during the commission of the rape, and his act of placing a shirt over D.C.'s face and the marks on D.C.'s face and both sides of her neck indicate that he had the specific intent to kill D.C. by suffocation.

In rejecting petitioner's sufficiency of the evidence claim on direct appeal the Louisiana Third Circuit Court of Appeal, extensively analyzed the evidence presented at trial, and found that the evidence was sufficient to support petitioner's conviction under the federal standard set forth by the United States Supreme Court in *Jackson v. Virginia.   State v. Tyler,* 93 So.3d 670, 672-675 (La. App. 3rd Cir. 2012).

Based on its extensive analysis of the evidence, the Third Circuit expressly found sufficient evidence to support petitioner's attempted first degree murder conviction as follows:

> In *State v. Wommack*, 00–137 (La.App. 3 Cir. 6/7/00), 770 So.2d 365, *writ denied*, 00–2051 (La.9/21/01), 797 So.2d 62, the victim got into her van and was grabbed by the defendant, who put a large cloth over her mouth with one hand and grabbed her throat and squeezed it with the other. The defendant then stated, "I'm going to kill you." *Id*. at 368. The victim and the defendant struggled, and the victim was able to release the defendant's grip from her neck so that she could speak.

The victim continued to struggle and was eventually able to open the van door, falling out of the van and onto her neck. She then ran to the car of a co-worker. The defendant was convicted of attempted second degree murder.

On appeal, the defendant, in *Wommack*, argued that the State failed to prove he had the specific intent to kill the victim. In finding the evidence was sufficient to support the defendant's conviction, this court stated:

> [W]e find sufficient evidence to support a finding of specific intent to kill. Ms. Smith testified that the assailant grabbed her by the throat, making it impossible to breathe. It was only after she continued to struggle that she was able to breathe and speak. The struggle, which included Ms. Smith being placed in a chokehold, lasted long enough for several verbal exchanges and was severe enough to have caused blood-producing injuries. The pressure was sufficient to produce bruising on Ms. Smith's neck which is evident in photos presented to the jury. Furthermore, Ms. Smith's testimony indicated that the assailant verbalized his intent to kill her. These factors support the jury's conclusion that the defendant's intent was to kill or inflict great bodily harm. See La.R.S. 14:30.1. Furthermore, the jury reached its decision in the face of the possibility of convicting the defendant of aggravated battery, the elements of which were included in the instruction. This assignment lacks merit. *Id.* at 373.

Based on *Wommack*, we find that Defendant's verbalizing of his intent to kill, along with the fact that he placed his hand over D.C.'s mouth, his putting of a shirt over her face to suffocate her, and his holding of her neck hard enough to cause bruising were sufficient for the trial court to infer that he had the specific intent to kill D.C.

*Tyler*, 93 So.3d at 675.

Under the appropriate standard of review, this Court cannot find that the state court's decision was contrary to, or an unreasonable application of, federal law, nor that the state court's factual determinations were unreasonable in light of the State court record.  Accordingly, the Third Circuit's decision can not be disturbed.

The standard for reviewing the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the government, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979) (emphasis added); *Gibson v. Collins*, 947 F.2d 780, 781 (5th Cir. 1991) *quoting Jackson*, 443 U.S. at 319.  Thus, a federal court "may find the evidence sufficient to support a conviction even though the facts also support one or more reasonable hypothesis consistent with the defendant's claim of innocence." *Gibson*, 947 F.2d at 783.  Stated differently, an applicant is entitled to *habeas corpus* relief only if it is found that "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id. citing Jackson,* 443 U.S. at 324; *West v. Johnson,* 92 F.3d 1385, 1393 (5th Cir. 1996) *citing Jackson*, 443 U.S. at 322-26.

This Court applies the *Jackson* standard "giving great weight to the state court's determination."  *Gibson*, 947 F.2d at 782, 786; *Porretto v. Stalder*, 834 F.2d 461, 467 (5th Cir. 1987).  Both direct and circumstantial evidence can contribute to the sufficiency of the evidence underlying the conviction.  *Schrader v. Whitley*, 904 F.2d 282, 287 (5th Cir. 1990) *citing Jackson*, 443 U.S. at 319, 324-25, 99 S.Ct. at 2789, 2792; *Pate v. Wainwright*, 607 F.2d 669, 670 (5th Cir. 1979) (*per curiam*). The fact that most of the evidence against a defendant was circumstantial does not change the standard of review.  *United States v. Zuniga-Salinas*, 945 F.2d 1302, 1305 (5th Cir. 1991) *citing United States v. Lechuga*, 888 F.2d 1472, 1476 (5th Cir. 1989).

Contrary to petitioner's position, review of the sufficiency of the evidence does not include review of the weight of the evidence or the credibility of the witnesses, as those determinations are the exclusive province of the jury.  *United States v. Young*, 107 Fed.Appx. 442, 443 (5th Cir. 2004) *citing United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993); *Garcia*, 995 F.2d at 561 *citing United States v. Greenwood*, 974 F.2d 1449, 1458 (5th Cir. 1992); *Green v. Johnson,* 160 F.3d 1029, 1047 (5th Cir. 1998); *Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789 (noting that it is the jury's responsibility to "resolve conflicts in testimony, to weigh evidence, and to draw reasonable inferences from basic facts to ultimate facts."). Accordingly, all credibility choices and conflicting inferences are to be resolved in

favor of the verdict.  *Ramirez v. Dretke*, 398 F.3d 691, 695 (5ᵗʰ Cir. 2005) *citing Cyprian*, 197 F.3d at 740.  The reviewing court is not authorized to substitute its interpretation of the evidence for that of the fact finder.  *Alexander v. McCotter*, 775 F.2d 595, 598 (5ᵗʰ Cir. 1985).

First degree murder is the "killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm upon a victim under the age of twelve years." La. R.S. 14:30(A)(5).  An attempt is defined as "[a]ny person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended." La. R.S. 14:27(A).

The crime of attempted murder, whether first or second degree, requires proof of the specific intent to kill and the commission of an overt act tending toward the accomplishment of that goal. *State v. Cepriano*, 767 So.2d 893, 897 (La.App. 5ᵗʰ  Cir. 8/29/00).  Specific intent is defined as "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act. . . . ." La.R.S. 14:10(1); *State v. Brooks*, 839 So.2d 1075, 1079 (La. App. 2d Cir. 2003) *citing State v. Lindsey*, 543 So.2d 886 (La. 1989).  Since specific intent is a state of mind, it need not be proved directly but may be inferred from the circumstances of the transaction and the actions of the defendant.  *State v. Graham*, 420 So.2d 1126, 1127 (La. 1982);

13

*State v. Broaden*, 780 So.2d 349, 362 (La. 2001).  Specific intent to kill or to inflict great bodily harm may be inferred from the extent and severity of the victim's injuries. *State v. Watson*, 175 So.3d 1192, 1195 (La. App. 3rd Cir. 2015); *State v. Smith,* 166 So.3d 416, 421 (La. App. 2nd Cir. 2015).

Direct evidence consists of testimony from a witness who actually saw or heard an occurrence, proof of the existence of which is at issue; circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience.  *State v. Austin*, 399 So.2d 158, 160 (La.1981);  *State v. Lilly*, 468 So.2d 1154, 1158 (La. 1985).

The Third Circuit analyzed the evidence as follows:

D.C. testified that she was ten years old when Defendant raped her. When interviewed, D.C. told the interviewer that Defendant raped her. She explained that rape meant he put his private in her and touched her where she did not want to be touched. D.C. said that Defendant entered her room through a window while she was sleeping and got on top of her back and said, "Don't scream, or I'll kill you." Defendant then pulled down her pants. D.C. started crying, and he put his hand over her mouth. She then said that Defendant put his "private in my behind, and his finger, and he started to put his private in my private. And I kept trying to get him to stop, and he slapped me on my back, every time I didn't open my legs." After Defendant concluded these heinous acts, he told D.C. to get him back together with her mother. D.C. further stated:

> Whenever he had put me on the floor, and started to try
> and smother me with um ... his shirt, or I think a pillow,
> I'm not sure about that one[,] but he tried to smother me

> on the floor. And[,] ... he tried to put his private in me
> then. And then after that, he put me on the bunk bed,
> where the wood's at [sic] and he pushed me against it[;]
> then[,] he put his butt in my private, every time he would
> like, feel me screaming, or trying to scream, he would
> put his private deeper in my butt.

When asked about Defendant's attempts to smother her, D.C. stated,
"He tried to push it down on my face, but he couldn't because ... well,
he did, but ... I had my face like that, and he didn't notice." D.C. then
stated she had her face turned sideways. D.C. again stated that
Defendant slapped her on the back every time she would not open her
legs, and then he would put his private in her private.

Dr. Christopher Lawrence, an emergency room physician, testified
that D.C. was brought by ambulance to the emergency room on
March 8, 2009. Dr. Lawrence stated that D.C. told him that Defendant
said, "Don't scream or I'll kill you." D.C. also stated that Defendant
restrained her by holding her mouth with his hand and holding her
neck and that he slapped her on the back.
Dr. Lawrence further testified that D.C. had swelling to her right lip,
abrasions to the lips, abrasions to the right cheek, and scratches and
bruising on both sides of the neck. Dr. Lawrence also testified that the
abrasions had to be caused by a fairly rigid or semi-sharp object and
that they could have been caused by "hands, any kind of choking
maneuver with fingernails."

Nancy Mire, a registered nurse, testified that D.C. stated the
following when asked what occurred:

> He came in through my window. He laid on top of my
> back and said, "Don't scream or I'll kill you." He pulled
> my pants down and started to put his private part in my
> butt. He started to put his finger in the bottom.... He put
> his private part in my private. He kissed me and put his
> tongue in my mouth.... He put [me] on my knees against
> the wall—against the wood of [the] bunk bed and started
> to put his private part into my bottom. He put me on the
> floor and tried to smother me with his T-shirt. He started

> to talk to me, told me he was sorry and help me get—get
> me and your mom back together and tell your brother to
> help me and your mom get back together. He stated your
> mother does not tell you the truth about how your dad
> died. Patient states he had his hand over her mouth the
> whole time. He wiped the window sill with his shirt and
> put the screen back on the window.

> Trinh Landry, a DNA analyst, testified that Defendant's DNA was
> found on vaginal and rectal swabs taken from D.C.

In light of the above, viewing the evidence in the light most favorable to the

prosecution and resolving all conflicting inferences from the evidence presented in

favor of the verdict as is required by *Jackson* and its progeny, the evidence

presented at trial was more than sufficient to sustain petitioner's attempted first

degree murder conviction on federal *habeas* review.  Considering  the "great

weight" afforded  to the state court's determination and the above summarized

evidence, the undersigned finds that "any rational trier of fact could have found

the essential elements of the crime beyond a reasonable doubt."

Although the victim's testimony may have also been  consistent with

petitioner's claim that he was merely preventing the victim from screaming and not

trying to kill her, the trial court rejected that conclusion, and instead, concluded

that petitioner had a specific intent to kill D.C.   This conclusion is supported not

only by the testimony of the victim that petitioner placed his hand over her mouth

and tried to smother her with a shirt or a pillow, but also by the testimony of Dr.

Lawrence regarding the physical injuries to D.C.'s face and neck, which included

bruising to both sides of the victim's neck that Dr. Lawrence testified was

consistent with a choking maneuver.  Moreover, both Dr. Lawrence and Nurse

Mire corroborated the victim's testimony regarding petitioner's threat to kill her if

she screamed and her testimony that petitioner had placed his hands over her

mouth.  As he did in the Third Circuit on direct appeal, petitioner urges this Court

to weigh the evidence in his favor.   However, on a sufficiency of the evidence

review, it is not the province of a reviewing court to make credibility

determinations or to review the weight of the evidence accepted by the trier of

fact. *See Young, Garcia, Greenwood, Green* and *Jackson*, *supra*.

Although the court could have made contrary inferences from the evidence

presented, the court chose instead to credit the victim's and Dr. Lawrence's

testimony regarding the physical force applied by petitioner and the threats he

made during the rape to draw the conclusion that petitioner had a specific intent to

kill D.C.  This testimony is more than sufficient to establish that an attempted first

degree murder occurred by manual strangulation and smothering through the use

of a shirt or pillow and Tyler's own hands.  This Court therefore cannot find the

testimony and inferences drawn therefrom regarding the presence of specific intent

so incredible or insubstantial that, as a matter of law, it can be discounted.

For these reasons, petitioner's sufficiency of the evidence claim does not warrant federal *habeas* relief.

## II. Double Jeopardy

Petitioner contends that his conviction on charges for both aggravated burglary and aggravated rape violates the constitutional prohibition against double jeopardy.

The Fifth Amendment to the United States Constitution contemplates three types of double jeopardy: "a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense." *United States v. Gonzalez,* 76 F.3d 1339, 1343 (5th Cir. 1996) *citing United States v. Halper,* 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487 (1989). With respect to the third scenario, which is at issue herein, the United States Supreme Court has set forth the so-called *Blockburger* test, to determine when the same act constitutes a violation of two distinct statutory provisions, thus permitting the imposition of cumulative punishment. *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180 (1932). In order to determine if the state can constitutionally charge two offenses or only one, the court must examine the elements of each offense and determine if each offense requires proof of an additional fact that the other does not. *Id*. at 304, 52 S.Ct. at 182. The analysis focuses on the elements of the offenses charged, not on the

18

evidence adduced at trial.  *United States v. Payan*, 992 F.2d 1387, 1392 (5th Cir. 1993) (citations omitted).  If each offense requires proof of an additional fact which the other does not, then the *Blockburger* test is satisfied, "notwithstanding a substantial overlap in the proof offered to establish the crimes . . . ."  *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 2221, 2226 (1977) *quoting Iannelli v. United States*, 420 U.S. 770, 785 fn. 17, 95 S.Ct. 1284, 1294 fn. 17 (1975). In such cases, there are two offenses, and hence, no double jeopardy violation.

As the Fifth Circuit succinctly has explained:

> We apply the *Blockburger v. United States*[, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932),] test to determine whether two different statutes punish the same offense. *Blockburger* requires us to compare the two statutes at issue and ask "whether each provision requires proof of an additional fact which the other does not". If either statute contains no element not also found in the other statute, the statutes "fail" the *Blockburger* test and the defendant may not be punished under both of them "in the absence of a clear indication of contrary legislative intent". Two statutory offenses need not be identical to constitute the same offense for double jeopardy purposes. The *Blockburger* inquiry focuses on the statutory elements of the offenses, not on their application to the facts of a specific case before the court. Thus, the question is not whether this violation of [the first statute] also constituted a violation of [the second statute], but whether all violations of the former statute constitute violations of the latter.

*United States v. Singleton*, 16 F.3d 1419, 1422 (5th Cir. 1994) (emphasis in original) (footnotes omitted).

Under Louisiana law, aggravated rape and aggravated burglary are separately defined crimes.  La.R.S. 14: 42[3] and La.R.S. 14:60[4].  As found by the Louisiana Third Circuit Court of Appeal on direct appeal,  each requires an element that the other does not.  "Aggravated burglary requires the unique element of unauthorized entering of an inhabited dwelling; whereas, aggravated rape requires proof of the unique element of sexual intercourse."  *Tyler*, 93 So.3d at 678 *citing State v. Anderson*, 66 So.3d 568 (La.App. 3 Cir. 6/1/11), *writ denied*, 69 So.3d 1167  (La.9/23/11) and *State v. Williams*, 924 So.2d 1159 (La.App. 3 Cir. 3/1/06), *writ denied*,  944 So.2d 1284 (La.12/15/06).  Neither of those elements

---

[3] At the time of the offense, Louisiana Revised Statutes 14:42 provided, in pertinent part:
> A. Aggravated rape is a rape committed upon a person sixty-five years of age or older or where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
> . . . .
>> (4) When the victim is under the age of thirteen years. . . .

Effective August 1, 2015, the offense was re-named "first degree rape."  *See* La. R.S. 14:42(A)(4); Acts 2015, No. 256, § 1.

[4] Louisiana Revised Statutes 14:60 provides in pertinent part:
> Aggravated burglary is the unauthorized entering of any inhabited dwelling, or of any structure, water craft, or movable where a person is present, with the *587 intent to commit a felony or any theft therein, if the offender,
>> (1) Is armed with a dangerous weapon; or
>> (2) After entering arms himself with a dangerous weapon; or
>> (3) Commits a battery upon any person while in such place, or in entering or leaving such place.

are present in the other statutory definition, so the *Blockburger* test is satisfied. Indeed, for this reason, both  Louisiana state courts and this federal court have properly rejected similar double jeopardy arguments.  *See Hedgespeth v. Warden*, 2015 WL 1089325, *5 (W.D. La. 2015) *citing State v. Anderson*, 66 So.3d 568 (La.App. 3 Cir. 2011), *writ denied*, 69 So.3d 1167  (La.9/23/11) and  *State v. Davis*, 36 So.3d 351 (La.App. 3d Cir. 2010); *State v. Mills*, 505 So.2d 933, 940 (La. App. 2nd Cir. 1987) *citing  State v. Kirkley*, 470 So.2d 1001 (La.App. 1st Cir.1985), *writ denied*, 475 So.2d 1105 (La. 1985).

In light of the above,  Tyler has not demonstrated that the decision of the Louisiana Third Circuit Court of Appeal was contrary to federal law as established by the United States Supreme Court in *Blockburger v. United States*.

In so finding, this Court notes that Louisiana law provides independent protections against double jeopardy.  *See* La. Const. art. I, § 15; La.Code Crim. Proc. art. 596.  Louisiana courts apply two tests to analyze double jeopardy claims, the federal standard set forth in *Blockburger* and the "same evidence test", a state-law standard that is broader in concept than *Blockburger*.   *Hampton v. Warden*, 2013 WL 5673622, *3 (W,D.  La. 2013) *citing Sanders v. Cain*, 2002 WL 32191037 n. 25 (E.D. La.2002) and *Tran v. Cain*, 1999 WL 460774,  n. 27 (E.D. La. 1999).  In this case, as in the Louisiana state courts, petitioner largely bases his double jeopardy argument on the Louisiana "same evidence test."

However, federal *habeas* applicants must claim violations of a federal

constitutional right. Claims that the state courts improperly applied state law

principles do not constitute an independent basis for federal *habeas* relief.

*Narvaiz v. Johnson*, 134 F.3d 688, 695 (5th Cir. 1998) *citing Estelle v. McGuire*,

502 U.S. 62, 67-68, 112 S.Ct. 475, 479-480 (1991).  Petitioner has not cited any

Supreme Court decision that clearly established the "same evidence test" as part of

*federal* double jeopardy law.  Indeed, the Supreme Court has actually "disclaimed

any intention of adopting a 'same evidence' test" in double jeopardy cases.

*Hampton*, 2013 WL 5673622 at *3 *quoting U.S. v. Felix*, 112 S.Ct. 1377, 1382

(1992).  Accordingly, this Court has consistently not applied the same evidence

test in *habeas* cases; the applicable standard is that set forth in *Blockburger*.  *Turks

v. Warden,* 2014 WL 940554, *3 (W,D. La. 2014) *citing  Hampton, supra.*;

*Simpkins v. Cain,* 2016 WL 805569, * 5 (W.D. La. 2016)[5]; *Hargrove v, Warden*,

2010 WL 2545197, *3-4 (W.D. La. 2010); *Harris v. Warden,* 2015 WL 5231266,

*12  (W.D. La. 2015); *Smith v. Warden*, 2013 WL 5271036, *14 at fn. 3 (W.D. La.

---

[5] In *Simpkins,* 2016 WL 805569 at * 5 this Court explained:
[T]he same evidence test is often employed by Louisiana courts in addition to the federal
*Blockburger* test, but *habeas* relief is not available on that theory because the Supreme
Court has actually "disclaimed any intention of adopting a 'same evidence' test" in
double jeopardy cases. *U.S. v. Felix*, 112 S.Ct. 1377, 1382 (1992). *Habeas* relief requires
a violation of federal constitutional law; it does not lie for violations of state law or
jurisprudential doctrines.

2013); *see also Nyberg v. Cain*, 2015 WL 1540423, *5 and fn. 11 (E.D. La. 2015) *citing Turks, supra*.[6].   Therefore, this Court does not reach the issue of whether petitioner's rights were violated under the state law protections against double jeopardy.

In sum, petitioner failed to meet the AEDPA's requirement that he demonstrate that the state court's denial of his double jeopardy claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.   Aggravated rape and aggravated burglary are separate offenses for Fifth Amendment double jeopardy purposes, and Tyler has not received multiple punishments for the same offense. Tyler's double jeopardy claim is therefore without merit.

## III.  Ineffective Assistance of Counsel

To prevail on an ineffective assistance of counsel claim, a petitioner must establish that (1) his attorney's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's

---

[6]In *Nyberg*, 2015 WL 1540423 at *5 Magistrate Judge Shushan of the Eastern District Court explained:

> [T]his Court notes that Louisiana law provides independent protections against double jeopardy. La. Const. art. I, § 15; La.Code Crim. Proc. art. 596. However, this Court need not and does not reach the issue of whether petitioner's rights were violated under the state law protections against double jeopardy. Federal *habeas corpus* relief may be granted only to remedy violations of the federal Constitution and laws of the United States; mere violations of state law will not suffice."

deficient performance, the outcome of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed. 2d 674 (1984).

The burden is on the petitioner to show that counsel's representation fell below an objective standard of reasonableness. *Id.* at 688. Judicial scrutiny of counsel's performance must be "highly deferential," and the court must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's alleged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*. at 689. The court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. . . " *Id*. (citation omitted). Thus, this court's review "strongly presum[es] that counsel has exercised reasonable professional judgment." *United States v. Payne*, 99 F.3d 1273, 1282 (5th Cir. 1996) *quoting Lockhart v. McCotter*, 782 F.2d 1275, 1279 (5th Cir. 1986).

*Strickland'*s prejudice element requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.[7] A reasonable probability is a probability

---

[7]The *Strickland* court outlined the extent of prejudice that must be established by the defendant: An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of the criminal proceeding if the error had no effect on the judgment. *Cf. United States .v Morrison*, 449 U.S. 361, 364-65 (1981).

sufficient to undermine confidence in the outcome." *Sayre v. Anderson*, 238 F.3d 631, 635 (5th Cir. 2001) *citing Strickland,* 104 S.Ct. at 2068.

A petitioner must affirmatively prove prejudice. *Deville*, 21 F.3d at 659; *Mangum v. Hargett*, 67 F.3d 80, 84 (5th Cir. 1995); *Earhart v. Johnson*, 132 F.3d 1062, 1066 (5th Cir. 1998). Self serving conclusory statements that the outcome would have been different "fall far short of satisfying *Strickland'*s prejudice element." *Sayre*, 238 F.3d at 635. Moreover, allegations of a mere possibility of a different outcome are insufficient to establish prejudice. *Lamb v. Johnson*, 179 F.3d 352, 359 (5th Cir. 1999).

Because both *Strickland* factors, that of deficient performance and prejudice, must be satisfied, "an ineffective assistance contention may be rejected on an insufficient showing of prejudice, without inquiry into the adequacy of counsel's performance." *Strickland,* 466 U.S. at 689-94. Petitioner must satisfy both prongs of *Strickland,* demonstrating both that counsel's performance was deficient and that the deficiency prejudiced the defense. *Crane v. Johnson*, 178

---

Defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability exists if the probability is sufficient to undermine confidence in the outcome.

When a defendant challenges a conviction , the question is whether there is reasonable probability that absent the errors the fact-finder would have a reasonable doubt respecting guilt.

*Strickland, supra,* at pages 691-692.

F.3d 309, 312 (5th Cir. 1999); *Green v. Johnson,* 160 F.3d 1029, 1035-36 (5th Cir. 1998).

Petitioner alleges that his counsel was ineffective for failing to file a Motion to Quash his indictment on grounds that the indictment was defective because it failed to adequately inform petitioner of the elements of attempted first degree murder and aggravated rape.

The Louisiana Third Circuit Court of Appeal rejected petitioner's ineffective assistance of counsel claim under the *Strickland v. Washington* standard, citing numerous articles contained in the Louisiana Code of Criminal Procedure, including article 465 which sets forth the Legislatively approved short forms for indictments.

Louisiana law allows the use of short form indictments, and permits a defendant in a criminal proceeding to file a motion requesting a Bill of Particulars setting forth the specifics of the charge alleged in the indictment.  *State v. Bourque*, 622 So.2d 198, 219 (La. 1993), overruled on other grounds by *State v. Comeaux*, 699 So.2d 16 (La. 1997);  *State v. Baylis*, 388 So.2d 713, 719 (La.1980); *State v. Liner*, 373 So.2d 121, 122 (La.1979);  La.C.Cr.P. art. 484.  The indictment against petitioner in the instant case is in accordance with the forms set

out under La.C.Cr.P.  art. 465(A)(7) and (39).[8]  Accordingly, the indictment was not defective.  Petitioner was fairly apprised of the nature of the charge against him and was not prejudiced in his ability to present a defense because of an insufficient indictment.

Further, because there was no valid grounds to support a Motion to Quash by counsel, counsel was not deficient.  Failure to file a frivolous motion or lodge a futile objection does not cause counsel's performance to fall below an objective level of reasonableness.  *See United States v. Preston*, 209 F.3d 783, 785 (5th Cir. 2000) *citing Green*, 160 F.3d at 1037; *Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002) *citing Koch v. Puckett,* 907 F.2d 524, 527 (5th Cir. 1990).

Moreover,  petitioner has failed to demonstrate prejudice as a result of counsel's failure to file a Motion to Quash his indictment.  Petitioner merely speculates that "reviewing court(s) would have quashed the indictment" and that this "would most definitely have changed the outcome" of his criminal proceeding. [rec. doc. 7-1, pg. 26].  However, such self serving conclusory statements that the

---

[8]Under article 465(A)(7) an attempted crime may be charged as follows: "7. Attempt--A.B. attempted to _____ (commit theft of one rifle--state property subject of the theft; rob C.D.; or murder C.D.; as the case may be)."

Under article 465(A)(39) Aggravated Rape may be charged as follows: "39. Aggravated Rape or First Degree Rape--A.B. committed aggravated or first degree rape upon C.D."

27

outcome would have been different "fall far short of satisfying *Strickland's*

prejudice element" as do "allegations of a mere possibility of a different outcome."

*Sayre*, 238 F.3d at 635.  *Lamb*, 179 F.3d at 359.

For these reasons, petitioner has not shown that he is entitled to relief on

this claim.[9]

## CONCLUSION

For the reasons set forth above;

**IT IS RECOMMENDED** that this petition for *habeas corpus* should be

---

[9]Additionally, the Court notes that the sufficiency of a state indictment is appropriate for federal *habeas* relief only when the indictment is so deficient that the convicting court was without jurisdiction. *Williams v. Cain,* 2016 WL 3248029, *21 (W.D. La. 2016) *citing Williams v. Collins*, 16 F.3d 626, 637 (5th Cir. 1994) *citing Yohey v. Collins*, 985 F.2d 222, 229 (5th Cir. 1993) and *Liner v. Phelps*, 731 F.2d 1201, 1203 (5th Cir. 1984).  State law dictates whether a state indictment is sufficient to confer a court with jurisdiction.  *Id. citing Williams*, 16 F.3d at 637.  If the question of the sufficiency of an indictment has been presented to the state's highest court of appeals, then consideration of the question is foreclosed in federal *habeas corpus* proceedings.  *Id. citing Morlett v. Lynaugh*, 851 F.2d 1521, 1523 (5th Cir. 1988), *Wood v. Quarterman*, 503 F.3d 408, 412 (5th Cir. 2007) and *McKay v. Collins*, 12 F.3d 66, 68-69 (5th Cir. 1994). *See also Gilliam v. Warden Louisiana State Penitentiary,* 2009 WL 395429, *1 (W.D. La. 2009); *Thomas v. Cain,* 2006 WL 2990083, *12 (W.D. La. 2006) *citing Hines v. Louisiana*, 102 F.Supp.2d 690, 695 (E.D. La. 2000);  *Decker v. Johnson*, 2001 WL 520828, *8 (N.D. Tex. 2001); *Dowell v. Lensing*, 805 F.Supp. 1335, 1343 (M.D. La. 1992).

The Third Circuit summarily denied petitioner's ineffective assistance of counsel claim in post-conviction proceedings essentially finding that the indictment was not defective under Louisiana state law.  The Louisiana Supreme Court implicitly adopted the Louisiana Third Circuit Court of Appeals' finding and rejected petitioner's contention that the indictment was fatally defective when it denied relief without comment.  *See Bowens v. Cain,* 2011 WL 4381540, *9 (E.D. La. 2011); *Thomas,* 2006 WL 2990083 at *12 *citing Dowell,* 805 F.Supp. at 1343, *Hines,* 102 F.Supp.2d at 695,  *Morlett,* 851 F.2d at 1523 and  *Decker*, 2001 WL 520828 at *8.   Thus, petitioner is foreclosed from seeking relief on the underlying substantive ground in this federal *habeas* proceeding.  By refusing to grant petitioner relief, the Louisiana Supreme Court necessarily, though not expressly, found that the indictment was not fatally defective.  Hence, the trial court had jurisdiction, and the indictment was sufficient for that purpose. *Thomas,* 2006 WL 2990083 at *12 *citing  Decker*, 2001 WL 520828 at *8, *Dowell*, 805 F.Supp. at 1343, *Hines,* 102 F.Supp.2d at 695 and  *Morlett,* 851 F.2d at 1523.

**DENIED AND DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. **Within fourteen (14) days from service of this**

**Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.** *See* 28 U.S.C. § 2253(c)(2). **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

Signed at Lafayette, Louisiana this 17th day of June, 2016.

_____
**PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE**